UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

Jamie Glenn Richardson,                                            Civil No. 04-4935  (DSD/AJB)

                Petitioner,

v.                                                         **REPORT AND RECOMMENDATION**

MCF–Stillwater,

                Respondent.


This matter is before the Court, Magistrate Judge Arthur J. Boylan, on petition pursuant to 28 U.S.C. § 2254 for habeas corpus relief by a person in state custody. [Docket No. 1].  Petitioner is confined at the Minnesota Correctional Facility at Stillwater pursuant to conviction and sentencing in Lake County District Court.  The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).

The prisoner alleges in his petition that he was effectively denied his right to testify and his right to present a complete defense as a result of certain evidentiary rulings made by the trial court. Respondent opposes petitioner's §2254 motion, asserting that the evidentiary rulings at issue were not in error and, in any event, the petitioner was not denied his right to due process as a result of such rulings.  For the reasons stated below it is recommended that the petition [Docket No. 1] be dismissed with prejudice.

**Background and Claims**

**Conviction and Sentence.**  Petitioner in this matter is a state prisoner currently incarcerated at MCF-Stillwater, Minnesota.  He was convicted by a Lake County jury on one charge

of first-degree premeditated murder and one charge of felony murder for shooting Robert Van Der Molen on January 11, 2001. In addition, he was convicted on two counts of first-degree assault against police officers, two counts of kidnapping, and one count of felon in possession of a firearm[1] in connection with a police standoff. Mr. Richardson was given concurrent and consecutive sentences, and a double upward departure which resulted in a total combined sentence of life plus 672-months on all counts. On appeal to the Minnesota Supreme Court, the first degree felony murder conviction was vacated. All other convictions and the consecutive sentences were affirmed, though the sentences on each of the two assault charges was reduced to 120 months. Petitioner's post-appeal sentence is life plus 36 years.[2]

**Offenses.**[3] Petitioner Jamie Richardson shot and killed Robert Van Der Molen on the early morning hours of January 11, 2001. The shooting occurred at an upstairs level apartment in Two Harbors, Minnesota, which was being temporarily occupied by Heather Nichols and her three children. Mr. Van Der Molen was Ms. Nichols' former husband and the father of her two sons, ages five and

---

[1] Petitioner pleaded guilty to the felon in possession charge. State v. Richardson, 670 N.W.2d 267, 272 (Minn. 2004).

[2] Petition under 28 U.S.C. §2254, page 6 [Docket No. 1]. The total sentence of life plus 36 years consists of a life sentence for murder and consecutive sentences of 120 months on each of the two assault charges and 96 months on each of the two kidnapping sentences. A 60-month sentence for felon in possession of a firearm is concurrent to the other sentences.

[3] The account of events provided here is taken from the description of circumstances relating to the offenses as recited in State v. Richardson, 670 N.W.2d 267, 272-73. Although petitioner argues that he was improperly denied the opportunity to present his own testimony and other facts into evidence at trial, thereby preventing the jury from hearing a distinctly different version of the events, petitioner does not dispute that the facts presented here are the facts that were heard by the jury and provided the basis for the verdicts.

seven. Ms. Nichols was married to petitioner at the time of the shooting. On January 8, 2001, Nichols obtained an order for protection prohibiting contact by Richardson after he made threats on her life. Nichols was provided transitional housing with the assistance of a domestic violence shelter. She also contacted Van Der Molen for help, and he told her that he would be coming to get her and the children. Van Der Molen came from his home in Iowa and arrived at the apartment in Two Harbors on the afternoon of January 10, 2001.

During the late evening of January 10, 2001, petitioner purchased ammunition at a gas station in Two Harbors. Sometime after midnight Nichols and Van Der Molen were awakened by petitioner's pounding on a downstairs door. Nichols moved her two sons into a closet and she joined them in the closet after hearing shots. Petitioner was then heard coming up the stairs and making ominous statements[4] as he approached. Subsequently, Nichols heard another gun shot and a body hitting the floor, after which petitioner said, "Bob's dead, you'll never call him again, come out. Kids, where are you." Richardson then pushed the closet door into Nichols, at which time she heard a gurgling noise coming from Van Der Molen as he lay on the floor. Nichols and her sons watched petitioner go to Van Der Molen and blow his head apart.

Police were called to the scene by occupants of a downstairs apartment who heard the commotion and fled the building after hearing the gunshots. One of the tenants heard Nichols screaming "don't kill me" and "I have to be here for the kids." When officers began to enter the apartment the

---

[4] Nichols testified that the petitioner eerily stated "daddy's home," reminiscent of the psychological horror/suspense movie *The Shining*. A downstairs tenant in the building described petitioner's fear inducing comments, including "here's Johnny" (likewise from *The Shining*), as those of "an insane person." State v. Richardson, 670 N.W.2d 267, 273 (Minn. 2003).

petitioner told them not to come up and another gunshot, possibly directed at the officers, was heard. Assistance was requested and as back-up arrived the two young boys emerged from the building. The boys excitedly told officers that their dad lay dead upstairs after being shot twice by Richardson. The boys repeated the statement that Richardson had shot their dad twice and further stated that there were "brains all over." Shortly thereafter petitioner yelled at officers to get back and yet another gunshot came in their direction.

The petitioner stayed in the apartment with Nichols and her two-year old daughter for about three additional hours before Nichols was able to escape at around 5:00 a.m., just as a police Emergency Response Team, including a marksman, arrived at the scene. An hour later Richardson yelled that he was holding the child and was not coming out. Petitioner finally surrendered after being wounded by the marksman who took his shot when he was able to see the petitioner without the child in his arms.

**Trial.**  The trial court rejected petitioner's efforts to introduce defendant's proffered evidence of an abusive relationship between the Heather Nichols and the decedent, Mr. Van Der Molen. It is petitioner's contention that the evidence was necessary foundation to his own intended testimony to the effect that he was aware of the prior abuse relationship between Van Der Molen and Nichols; that he had met Heather Nichols on the evening of January 10, 2001, and she had expressed fear that her ex-husband had come from Iowa to hurt her and the children; that Heather Nichols had given him a rifle, purchased ammunition with him and expected him to rescue her that night; that after he shot the lock off the front door and entered the house he heard Van Der Molen make the ominous statements that had been attributed to himself; that when he came up the stairs he saw Van Der Molen

4

fighting with Nichols and holding the young girl as if to throw the child over the railing; and that he shot Van Der Molen when he would not put the child down.  State v. Richardson, 670 N.W.2d 267, 275 n.7 (Minn. 2003)(citing petitioner's memorandum offer of proof).  Essentially, petitioner sought admission of the evidence to support a claim that his actions were in defense of the children and his ex-wife and to further establish motive for a claim that Nichols in fact fired the second and fatal shot to Van Der Molen's head.  State v. Richardson, 670 N.W.2d at 275.  On the prosecution' motion *in limine* the trial court excluded the proffered evidence based upon a determination that the jury would not be instructed on defense of others and therefore, character evidence would not be admissible to support such a defense.  The court also expressly advised the defendant that he was not ruling that Richardson could not testify on his own behalf or that he would be precluded from testifying as to the matters addressed in the offer of proof, but that his testimony alone would not entitle him to an instruction on defense of others.  Id. at 276.  Mr. Richardson declined to testify at trial, citing perceived limitations on his defense and his testimony as the basis for not testifying.   Petitioner's claims that his right to due process was violated as a result of the trial court's evidentiary rulings were presented to the Minnesota Supreme Court, along with a number of additional assertions of trial and sentencing errors.  The convictions were affirmed except as described above.  In the petition for writ of habeas corpus that is now before the Court the stated his grounds for relief are that the trial court deprived him of the right to testify by improperly restricting the parameters of his testimony and that the trial court restricted his right to present a complete defense.

**Discussion**

      **Right to Testify.**  Petitioner contends that evidence regarding an abusive relationship

between Heather Nichols and Robert Van Der Molen is pertinent to issues of premeditation, intent, and whether Nichols fired the second shot into Van Der Molen, and that by refusing to permit him to introduce such supporting evidence, the trial court constructively barred him from testifying with respect to those matters, and he was thereby deprived him of his due process right to testify in his own defense. Rock v. Arkansas, 483 U.S.49, 107 S.Ct. 2704, 2708-09 (1987). This argument fails. Richardson was expressly and thoroughly advised of his right to testify at trial and does not assert that he did not voluntarily and knowingly waive his right to testify. State v. Richardson, 670 N.W.2d at 282. Furthermore, defendant was not precluded from testifying in accord with his offer of proof. Id. at 276 n.8. This court finds that the petitioner's waiver of his right to testify was simply a matter of litigation strategy. No express limitations were imposed by the court with respect to the scope or substance of the defendant's testimony, no constructive or implicit limitations resulted from the trial court's refusal to admit the evidence that was the subject of any offer of proof, and the evidentiary exclusions did not have the practical effect of precluding the defendant from testifying. Defendant was not denied due process in that regard.

**Right to Present a Complete Defense.** Petitioner argues that he was denied his right to present a complete defense as a result of the trial court's exclusion of evidence regarding Mr. Van Der Molen's character which he contends was relevant to his claims that he was acting in defense of others, that his actions were not premeditated, and that Ms. Nichols had motive to shoot and kill Van Der Molen. The trial court determined, and the Minnesota Supreme Court agreed, that the defendant did not have a viable defense of others claim in light of petitioner's own description of the events, and the proffered character evidence was therefore not admissible with regard to that defense. The trial

court also determined that the character evidence was not admissible on the state of mind/premeditation defense in light of the defendant's failure to testify as to his knowledge of specific acts of misconduct by the victim. The Minnesota Supreme Court agreed with that assessment but determined that the prosecution opened the door to character evidence by soliciting evidence of the victim's good character. Even so, the appellate court found that the evidence of premeditation was overwhelming and that the error was therefore harmless. Finally, the trial court excluded evidence of the victim's relationship with Ms. Nichols, including bad acts by Ms. Nichols, with respect to which defendant sought admittance to establish that Ms. Nichols fired the fatal second shot. The supreme court noted that the defense should be allowed to present evidence of acts by third persons to cast doubt on defendant's own guilt, i.e. reverse-404 evidence, but that this right does not entitle defendant to create a defense based upon speculation, unsupported by evidence establishing a direct connection between the third party, Ms. Nichols, and the charged crime. State v. Richardson, 670 N.W.2d at 281. The third party's mere presence at the scene is insufficient to establish such nexus, particularly in light of other evidence in the case, including the petitioner's statement to police during the standoff that "I killed once and I'll do it again." Id. Furthermore, the Minnesota Supreme Court observed that the proffered third-party crimes evidence was not exculpatory. Id.

   The principle whereby a defendant has a constitutional right to a fair opportunity to present evidence to defend against a charge arises out of a series of United States Supreme Court decisions[5] which establish the principle as a derivative of the Compulsory Process, Confrontation and

---

[5] Ftn. 52. Washington v. Texas, 338 U.S. 14, 18 (1967)(compulsory process), Davis v. Alaska, 415 U.S. 308, 319-320)(confrontation), Chambers v. Mississippi, 410 U.S. 284, 295-303

Due Process Clauses. See David McCord, *The Admissibility of Evidence Offered by a Criminal Defendant to Suggest That Someone Else is Guilty*, 63 Tenn. L.Rev. 917, 929 (1996). Nonetheless, this constitutional right does not eviscerate the rules of evidence such that defendants should be permitted to present whatever evidence they may choose. Id. at 929. Rather, the evidentiary rule is weighed against the defendant's interest in presenting the defense, Id. at 930, and the constitutional right to present a defense essentially establishes a justification for overriding a state rule of evidence that would preclude the defendant from presenting evidence that could create a reasonable, non-speculative doubt as to the defendant's guilt. Id. at 985. Stated otherwise, the constitutional right to present a defense may broaden the scope of evidence which is admissible with respect to third-party crimes evidence, thereby requiring admission of evidence beyond that which would be permissible under a strict application of rules of evidence, particularly rules relating to character, but this leeway does not mandate that the "defendant should be allowed to throw strands of speculation on the wall and see if any of them will stick." State v. Richardson, 670 N.W.2d at 280 (quoting McCord at 984).

To the extent that evidence was excluded as inadmissible character evidence, the determination was made by application of state evidentiary rules relating to the admission of 404(b) evidence. The constitutional dimension requires consideration of the evidence in light of its speculative or non-speculative nature and advancement of an third-party perpetrator theory requires the existence of more that mere suspicion that the alternative perpetrator, and not the defendant, committed the crime. In this instance, other that Ms. Nichol's mere presence at the scene, there is no real evidence of

---

(1973)(due process).


a direct connection between Nichols the shooting itself.  Further considering evidence such as the defendant's admission that he had already killed once, along with  medical evidence establishing that the defendant's admitted first shot into the decedent's head would have been fatal, Richardson's proffer that Ms. Nichols killed Mr. Van Der Molen does not even rise to the level of mere suspicion with regard to either her motive or her participation in the shooting itself, and the trial court's refusal to permit such evidence was not violation of the defendant's due process right to present a defense.  Also, defendant's proffered evidence was not exculpatory with respect to his own state of mind, and did not constitute evidence sufficiently relevant to lack of premeditation so as to overcome the limitations on the admission of bad character evidence, despite the state's unfortunate though generally inconsequential reference to the decedent's good character.  Petitioner was not denied his constitutional right to present a defense at trial in this matter.

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Jamie Glenn Richardson's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **dismissed with prejudice**.

Dated:     October 28, 2005

                                           s/ Arthur J. Boylan
                                          Arthur J. Boylan
                                          United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for

each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before November 11, 2005.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.